UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
LUIS MORALES,                          :
                                       :
                 Petitioner,           :
                                       :  09 Civ. 9280 (RO)(THK)
                                       :
         -against-                     :
                                       :  **REPORT AND RECOMMENDATION**
WILLIAM A. LEE, Superintendant,        :
                                       :       (<u>PRO</u> <u>SE</u>)
                 Respondent.           :
---------------------------------------X

**TO: HON. RICHARD OWEN, United States District Judge.**
**FROM: THEODORE H. KATZ, United States Magistrate Judge.**

This habeas corpus proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(d) of the Local Civil Rules of the Southern District of New York.

On April 19, 2006, Petitioner Luis Morales pled guilty in New York Supreme Court, New York County, to one count of Criminal Sexual Act in the First Degree (N.Y. Penal Law § 130.50(1)), and one count of Burglary in the Second Degree (N.Y. Penal Law § 140.20(2)). As a persistent violent felony offender, Petitioner was sentenced to concurrent indeterminate prison sentences of from twenty-five years to life on the criminal sexual act count and from sixteen years to life on the burglary count. Petitioner is presently incarcerated at Green Haven Correctional Facility in Stormville, New York.

Petitioner seeks habeas relief under 28 U.S.C. § 2254,

claiming that his guilty plea was not knowing, intelligent, and voluntary, because he pled guilty in reliance upon a promise of a twenty-five year determinate prison sentence, but was instead sentenced to a prison term of twenty-five years to life. (See Petition, dated Oct. 13, 2009 ("Pet."), at 1.)

For the reasons that follow, this Court concludes that Petitioner is not entitled to habeas relief and recommends that the Petition be dismissed with prejudice.

## BACKGROUND

I.   Factual Background

At about 3:15 p.m. on January 21, 2005, J.M.[1] returned to her apartment. She noticed that the front door of her apartment, as well as that of the apartment across the hall, had been "broken open." (Transcript of Suppression/Sandoval Hearing, dated April 18, 2006 ("H. Tr."), Testimony of Detective Josh Ulan ("Ulan"), at 9.) J.M. called out, "hello, hello," and when she heard no response, she entered her apartment. (Id.) Shortly thereafter, she noticed Petitioner standing in the hallway. He told her that he lived on a higher floor in the building and asked her what happened. (See id. at 9-10.) J.M. did not recognize Petitioner. She told him that she thought somebody had broken into her

---

[1] In deference to N.Y. Civil Rights Law § 50-b, the victim will be referred to only by her initials — J.M.

apartment.  (See id.)

About a minute later, Petitioner pushed J.M. into her apartment and said, "You know what?  Give me your money."  (Id.) Petitioner then pointed an object at J.M. that she believed to be a gun, and told her to look away.  (See id. at 10.)  Petitioner removed J.M.'s glasses and threw them to the floor.  He took her credit card and $80 in cash.  Petitioner demanded that she give him her jewelry, but she told him that she had none.

Petitioner then removed J.M.'s scarf and used it to tie her hands together.  (See id. at 10.)  He ordered her to go to the bedroom, where he forced her to sit in a chair. He then forced her to perform oral sex.  J.M. begged Petitioner to refrain from sexual intercourse, and he agreed.  (See id. at 11.)  Petitioner told J.M. not to move and left the bedroom.  (See id.)

Police recovered a Metrocard from the floor of J.M.'s apartment.  (See id. at 16-18.)  A fingerprint found on the MetroCard was subsequently matched to Petitioner.  (See id.)

Petitioner was arrested on January 27, 2006.  He signed a written statement prepared by Detective Josh Ulan, in which he acknowledged breaking into the victim's apartment in order to get money to purchase drugs.  He further admitted to threatening the victim with a box cutter and demanding money, which she gave him. He acknowledged unzipping his pants, demanding oral sex, and

3

touching his penis to her mouth, but claimed that he "didn't feel right" about it and withdrew before she could engage in oral sex. (See id. at 29-30.)  Later that day, in the presence of Ulan and Assistant District Attorney Martha Stolley, Petitioner gave a videotaped statement.  On January 28, 2006, J.M. identified Petitioner in a lineup as her assailant. (See id. at 20-21, 35-41.)

II.  Plea Colloquy and Sentencing Hearing

Prior to the commencement of the suppression hearing, on April 18, 2006, defense counsel acknowledged that Petitioner was a persistent violent felon, and that he was facing a minimum indeterminate sentence of "twenty to life" and a maximum sentence of "twenty-five to life," as well as the possibility of consecutive sentences on the two counts.  Counsel stated that Petitioner had asked him to see if the prosecutor "would consider coming down one count and letting him plead to sixteen to life." (Id. at 3.)  The prosecutor refused to make such an offer, as the head of the Sex Crime Unit of the District Attorney's Office had rejected this same proposal.  (See id. at 3-4.)  Petitioner's counsel then moved to suppress the written and videotaped statements taken from Petitioner, as well as the lineup identification.  Petitioner's motion was ultimately denied.  (See id. at 73-79.)

On April 19, 2006, Petitioner appeared, with his attorney, for jury selection.  Prior to the prospective jurors entering the

4

courtroom, the court noted that Petitioner's attorney had asked "if the prosecution would go below twenty-five [years] to life," and that the prosecution had declined that request. (See Transcript, dated April 19, 2006 ("Plea Tr."), at 96.) The court also remarked that Petitioner's counsel had approached him directly to see if he would "go to twenty [years] to life," a request that the judge described as "ridiculous." (See id. at 96.) The court then added: "If [Petitioner] loses at trial or if he pleads guilty as an act of charity to prevent this lady from having to describe in a public courtroom what happened to her, he's still going to get twenty-five to life," and "[i]f he takes a plea and she doesn't have to testify, I won't give him a consecutive sentence but he's finished." (Id.)

Petitioner's attorney acknowledged the judge's position, stating: "I understand the court's position in regards to the consecutive versus concurrent twenty-five [years] to life sentence were he to plead guilty." (Id. at 97.) A recess was then taken so that defense counsel could discuss the court's offer with Petitioner. Returning after the break, Petitioner's counsel informed the court that Petitioner wished to plead guilty. (See id.) The court responded that if Petitioner pled guilty to the sexual act and burglary counts, he would sentence Petitioner to concurrent sentences. (See id. at 97-98.) The court read the two

5

charges to Petitioner.  (See id. at 98.)  Petitioner then admitted
that, on January 21, 2005, he forced a woman to perform oral sex in
an apartment on East 17th Street, and that he burglarized another
apartment in the same building.  (See id. at 98-99.)

     The court advised Petitioner that he was charged with crimes
for which he could have received a consecutive sentence, noting
that, for the Burglary in the Second Degree count, Petitioner
"could have received a sentence of up to fifteen years consecutive
to the sentence on the charge related to the forcible and criminal
sexual act."  (Id. at 99.) The court explained that, "[b]ecause of
the promise, in order to avoid this lady having to come in and
describe what happened in front of fourteen strangers," he would
not sentence Petitioner to consecutive prison terms.  (Id. at 99-
100.)  The court then misspoke in stating that Petitioner was to
receive "the maximum sentence of twenty-five years determinate on
the Criminal Sexual Act."  (Id. at 100.) (emphasis added).

     The court added that, if Petitioner was ever released from
prison, he would have to serve five years of post-release
supervision upon his release and register as a sex offender.  (See
id. at 101.)  The court then adjudicated Petitioner a persistent
violent felony offender.  (See id. at 101-03.)

     On June 5, 2006, Petitioner appeared for sentencing.
Petitioner's counsel notified the court that Petitioner wished to

6

withdraw his plea on the basis of ineffective assistance of counsel. (<u>See</u> Transcript of Sentencing Hearing, dated June 5, 2006 ("Sentencing Tr."), at 2.)   Petitioner's counsel handed Petitioner's written <u>pro</u> <u>se</u> motion, dated June 3, 2006, to the court. (<u>See</u> <u>id</u>. at 3.)   In the motion, Petitioner claimed that his counsel was not familiar with his case and had not conducted an investigation to determine whether a plea bargain was beneficial to Petitioner, whether Petitioner had an affirmative defense or alibi, or whether Petitioner was guilty or innocent. (<u>See</u> <u>id</u>.)   When asked by the court to elaborate on his claims, Petitioner replied that he had been incarcerated for 18 months and had not seen his lawyer once face-to-face to review paperwork. (<u>See</u> <u>id</u>. at 3-4.) The court reminded Petitioner that he had admitted to committing the crimes. (<u>Id.</u> at 4.)   The following colloquy then ensued:

> THE DEFENDANT: [Counsel] told me, you know, to plead guilty. He forced me to take 25 to life. I'm not copping out to no 25 to life.

> THE COURT: You already did, sir. This is what happened.

> THE DEFENDANT: I was in a state of shock. When they mentioned 25 to life, my mother was crying. My lawyer was looking over at me. The jury was outside. He was saying they offered you a hundred years, you might as well cop out. I'm not copping out, doing 25 to life, you Honor. My family stated to me that it was life, you Honor. I thought I was given a flat bid. That's how ignorant I am to my whole situation as far as my case. I haven't spoken to my lawyer, sitting down, face-to-face, going over any kind of papers whatsoever. I have no papers dealing with my cases.

(<u>Id</u>. at 4-5.)

7

Petitioner claimed that when the court said "25," he heard "muffles and distant voices" and "didn't hear nothing [the court was] saying." (Id. at 6.)

The court rejected Petitioner's characterization of events during the plea colloquy and held that Petitioner understood that he was getting twenty-five years to life on the day of the guilty plea, and that Petitioner's plea was voluntary. (See id. at 7.)

> The record will reflect that you told me you did the two crimes. You told me that you understood you could face fifty years. You understood you were getting 25 to life. You said you were pleading guilty voluntarily. You said if you told me something different in the future it would not be true because you told me the truth on the date you pled guilty. That's what you said. I'm holding you to your word.

(Id. at 7.) Petitioner continued to insist that he "didn't know what the hell was going on," until the judge interjected that he did not "believe [Petitioner] at all," and denied Petitioner's motion to withdraw the plea. (Id. at 7-8.)

Petitioner again claimed that he was innocent. (See id. at 10.) The court declared that, "It's too late. You don't lie to a Supreme Court judge," and sentenced Petitioner to concurrent prison sentences of "twenty-five to life on the criminal sexual act" and "[s]ixteen years to life on the burglary count." (Id. at 10-11.)

III. Procedural History

Petitioner, through his attorney, filed a direct appeal in the Appellate Division of the New York Supreme Court, First Department,

8

arguing that his plea was not knowing, intelligent, or voluntary because Petitioner had relied on a promise of a 25-year determinate sentence, and the sentence ultimately imposed was a concurrent sentence of twenty-five years to life and sixteen years to life. On March 24, 2010, the Appellate Division unanimously affirmed Petitioner's conviction. See People v. Morales, 60 A.D.3d 546, 546, 875 N.Y.S.2d 473, 473 (1st Dep't 2009). The Appellate Division found that "the record established that the plea was entered knowingly, intelligently, and voluntarily." Id. The court concluded its opinion by stating that "[n]either [the court's] misstatement, nor the court's failure to specify the minimum term of the concurrent sentence defendant would receive on the burglary conviction, could have influenced defendant's decision to plead guilty." Id.

Petitioner sought leave to appeal to the New York Court of Appeals. Leave was denied on June 4, 2009. See People v. Morales, 884 N.Y.S.2d 699 (2009). Petitioner subsequently filed this action.

## DISCUSSION

Petitioner's sole claim in the Petition is that his guilty plea was not knowing, intelligent, and voluntary because, during the plea colloquy, the trial court stated that Petitioner would receive a determinate prison sentence of twenty-five years, and he received

a sentence of twenty-five years to life in prison. In his Reply Brief, Petitioner raises an additional contract-based claim, arguing that the court committed to imposing a sentence of a twenty-five year fixed term and should be bound to that commitment. (See Petitioner's Reply Brief, dated Apr. 26, 2010 ("Pet'r Reply Br."), at 3-5.)

I.   Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000); accord Leslie v. Artuz, 230 F.3d 25, 32 (2d Cir. 2000). The phrase,

10

"clearly established Federal law, as determined by the Supreme Court of the United States," means the "holdings as opposed to the dicta of the [Supreme Court's] decisions as of the time of the relevant state-court decision." Id. at 412, 120 S. Ct. at 1523; see also Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523. The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but, rather, whether it was "objectively unreasonable." See id. at 408-10, 120 S. Ct. at 1521-22; see also Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable."); Lurie v. Wittner, 228 F.3d 113, 128-29 (2d Cir. 2000) (same). However, the Second Circuit has explained that while "some increment of incorrectness beyond error is required... the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest

11

judicial incompetence." Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003). "A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

II.  Validity of the Guilty Plea

    A.  Governing Law

    It is well-settled that the Due Process Clause of the Constitution requires an affirmative showing that an accused's guilty plea is entered knowingly, intelligently, and voluntarily before the trial court may accept the plea. See Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S. Ct 2398, 2405 (2005); Godinez v.

12

Moran, 509 U.S. 389, 400, 113 S. Ct. 2680, 2687 (1993); Parke v. Raley, 506 U.S. 20, 28, 113 S. Ct. 517, 523 (1992), reh'g denied, 506 U.S. 1087, 113 S. Ct. 1068 (1993); Salas v. United States, 139 F.3d 322, 324 (2d Cir.), cert. denied, 524 U.S. 956, 118 S. Ct. 2377 (1998). A knowing plea is entered "with understanding of the nature of the charge and the consequences of the plea." Santobello v. New York, 404 U.S. 257, 262, n. 1, 92 S. Ct. 495, 498 (1971). In order to ensure that a defendant's guilty plea represents "a voluntary and intelligent choice among the alternative courses of action open to the defendant," the trial court judge must make a searching inquiry into the circumstances surrounding the plea. See Parke, 506 U.S. at 28, 113 S. Ct. at 523 (internal quotation marks omitted).

Once a plea has been entered, there are strict limits on the circumstances under which the plea may be attacked on collateral review. A guilty plea is subject to collateral attack only if it was not made knowingly and voluntarily. See Wilson v. McGinnis, 413 F.3d 196, 199 (2d Cir. 2005); Salas, 139 F.3d at 324; Tejeda v. United States, No. 99 Civ. 2948 (DLC), 1999 WL 893275, at *4 (S.D.N.Y. Oct. 18, 1999); Ramirez v. Headley, No. 98 Civ. 2603 (RWS), 1998 WL 788782, at *5 (S.D.N.Y. Nov. 10, 1998); Tineo v. United States, 977 F. Supp. 245, 255 (S.D.N.Y. 1996).

A court may determine that a defendant "knowingly" and

13

"voluntarily" entered into the plea agreement by looking to, <u>inter</u> <u>alia</u>, his allocution statements.  <u>See</u> <u>United States v. Hernandez</u>, 242 F.3d 110, 112 (2d Cir. 2001); <u>see also</u> <u>United States v. Torres</u>, 129 F.3d 710, 715-16 (2d Cir. 1997) (holding that statements made at a plea allocution carry a "strong presumption of veracity"). Moreover, courts are allowed to presume that a defense attorney has fully explained the terms and conditions of the bargain to his or her client.  A plea is made knowingly when a defendant was advised by competent counsel, was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties. <u>See</u> <u>Eber-Schmid v. Cuomo</u>, No. 09 Civ. 8036 (BSJ)(AJP), 2010 WL 1640905, at *13 (S.D.N.Y. Apr. 22, 2010) <u>Tejeda</u>, 1999 WL 893275, at *4; <u>Tang v. People</u>, No. 96 Civ. 5763 (JG), 1997 WL 1068683, at *4 (E.D.N.Y. Mar. 25, 1997); <u>see also</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 437, 103 S. Ct. 843, 852 (1983) (holding that adequate representation by counsel is <u>prima facie</u> evidence that the plea was voluntary).

  B. <u>Petitioner's Guilty Plea Was Entered Into Knowingly and</u>
     <u>Voluntarily</u>

  Petitioner contends that his guilty plea was not knowing and voluntary because he was told, and believed, during the plea allocution, that he was pleading guilty to a determinate sentence

14

of twenty-five years' imprisonment, and not an indeterminate sentence of twenty-five years to life imprisonment. (<u>See</u> Pet'r Reply Br. at 1.) We disagree.

When a defendant claims that his plea was not knowing and voluntary because he was given misinformation about the sentence he would receive, a reviewing court must determine (1) "whether the defendant was aware of actual sentencing possibilities;" and (2)"if not, whether accurate information would have made any difference in his decision to enter a plea." <u>Williams v. Smith</u>, 591 F.2d 169, 172 (2d Cir. 1979), <u>cert. denied</u>, 442 U.S. 920, 99 S. Ct. 2845 (1979) (citing <u>Caputo v. Henderson</u>, 541 F.2d 979, 984 (2d Cir. 1976)); <u>accord</u> <u>United States v. Westcott</u>, 159 F.3d 107, 113 (2d Cir. 1998) ("The defendant must demonstrate that the misinformation mattered."); <u>see also</u> <u>Sanchez v. Keller</u>, No. 06 Civ. 3370 (JSR)(THK), 2007 WL 4927791, at *8 (S.D.N.Y. 2007) (Report and Recommendation, adopted at 2008 WL 461593); <u>Scales v. N.Y. State Div. of Parole</u>, 396 F. Supp. 2d 423, 432 (S.D.N.Y. 2005) ("Where a habeas corpus petitioner seeks relief on the ground that he subjectively misunderstood the consequences of his choice, he must provide substantial objective proof showing the misunderstanding was reasonably justified.") (internal quotation marks omitted).

### 1.   Petitioner's Knowledge

The Appellate Division found that Petitioner's guilty plea was

15

made with actual and full awareness of the sentence he would receive. See People v. Morales, 875 N.Y.S.2d at 473. The court noted that "it was made clear to [Petitioner] that he was a persistent violent felony offender who could not receive anything less than a life sentence," and that "during the colloquies leading up to the plea, it was made equally clear to [Petitioner] that the offer was an aggregate term of twenty-five years to life to cover all the charges." Id. The Appellate Division found that Petitioner, "who was exposed to a much greater aggregate term if convicted of multiple charges after trial, accepted this offer" and that "[i]t was only after [Petitioner] agreed to accept this sentence that the court misspoke in referring to a 25-year determinate sentence." Id. The Appellate Division concluded that neither the "misstatement, nor the court's failure to specify the minimum term of the concurrent sentence [Petitioner] would receive on the burglary conviction, could have influenced [Petitioner's] decision to plead guilty." Id.

There is no basis for this Court to conclude that the state court's findings were either an unreasonable determination of the facts presented in the state court proceedings, or contrary to clearly established federal law.

The record clearly establishes that Petitioner's guilty plea was knowing and voluntary. To start, Petitioner freely admitted

16

his guilt during the plea colloquy, with Petitioner assuring the court that his representations were truthful, and that he was not under the influence of alcohol or drugs at the time of plea. (See Plea Tr. at 100-01.) It is also clear that Petitioner was informed of the fact that the court would impose an indeterminate sentence, with a maximum term of life imprisonment. For example, one day prior to Petitioner's plea, Petitioner's counsel acknowledged, in Petitioner's presence, that Petitioner was a "mandatory violent persistent felon" and, as such, faced a minimum sentence of "twenty to life" and a maximum sentence of "twenty-five to life," if convicted. (See Hearing Tr. at 3.) In light of that, Petitioner, through his counsel, asked whether the District Attorney would consider "coming down one count and letting him plead to sixteen to life" — a request that the Assistant District Attorney flatly rejected. (Id. at 3-4.)

The next day, the day of the plea, Petitioner's counsel, in the presence of Petitioner, asked the court if it would "go to twenty to life" — a request that the court dismissed as "ridiculous." (See Plea Tr. at 96.) The judge reminded Petitioner that "he's got eight felony convictions," and that "[i]f he loses the trial or if he pleads guilty . . . he's still going to get twenty-five to life," thus confirming, more specifically, that Petitioner clearly understood that he would be sentenced to a

17

prison term of from twenty-five years to life on the criminal sexual act count. (Id.)   Remarks made by defense counsel at the plea hearing also indicate that there was no misunderstanding as to the sentence being promised to Petitioner.   Defense counsel acknowledged that he "underst[ood] the court's position in regards to the consecutive versus concurrent twenty-five to life sentences were [Petitioner] to plead guilty." (See Plea Tr. at 97.)

After this colloquy, the court granted Petitioner's counsel's request for a recess so that he could talk to his client about the plea offer. (Id.)   Upon returning from the recess, Petitioner pled guilty to two charged counts. (Id. at 97-99.)   There is no basis to believe that he did so with any understanding other than what had been placed on the record immediately preceding the recess — that Petitioner's sentence would be an indeterminate prison term of from twenty-five years to life.[2]

As for the burglary count, at no time during the plea colloquy did the court inform Petitioner of the likely sentence he would

_____

[2] Notably, the record reflects that neither Petitioner nor Petitioner's counsel ever sought a determinate sentence.   This is unsurprising, given that such a sentence would have been illegal. As defense counsel acknowledged, the minimum sentence that Petitioner, as a persistent violent felony offender, could have received for the criminal sexual act count was an indeterminate prison term of from twenty years to life.   See N.Y. Penal Law § 70.08(2) and (3)(a-1).   In other words, a determinate prison sentence was not a "[course] of action open to the defendant." Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992).

18

receive, other than to indicate that it would be a concurrent sentence. (See Plea Tr. 96-103.)  This omission likely occurred because this was a less serious charge and the sentence was to be concurrent with the sentence for the more serious sexual assault charge.  The court was, therefore, free to impose an indeterminate sentence of sixteen years to life on the burglary count, concurrent with the sentence on the criminal sexual act count, without it having any impact on Petitioner's actual prison term.  Indeed, without a firm promise by the court on the sentence for the burglary count, Petitioner cannot argue that he was "clearly under the impression that the sentence to be imposed . . . was a determinate sentence" for both the criminal sexual act count and the burglary count.  (See Pet'r Reply Br. at 2.)

Petitioner, therefore, fails to demonstrate that he was not aware of the actual sentence he faced.  Nevertheless, even assuming, for argument's sake, that Petitioner did not have a clear understanding that he would receive a sentence of twenty-five years to life in prison, rather than a fixed twenty-five year sentence, Petitioner's claim fails because he cannot satisfy the second-prong of the Williams test, that is, that knowledge of his actual sentence would have made a difference in his decision to plead guilty.

19

2.   Effect  of  Misstatement  on  Petitioner's  Plea
Decision

Even if Petitioner could show that he was not aware of the
precise sentence that he would receive, he must also show that
"accurate information" would have made a "difference in his
decision to enter a plea." Williams, 591 F.2d at 172; accord
Caputo, 541 F.2d at 984 (affirming district court's finding that
"the sentencing misinformation had no effect on appellant's
decision to plead"); Potter v. Green, No. 04-CV-1343, 2009 WL
2242342, at *4 (E.D.N.Y. July 24, 2009) ("If the Court determines
that the petitioner was unaware of direct consequences of his
plea-and, therefore, that his plea was involuntary-it must next
determine whether Petitioner's lack of knowledge of the plea's
consequences 'made any difference in his decision to enter [the]
plea.'") (quoting Hunter v. Fogg, 616 F.2d 55, 58 (2d Cir. 1980)
(in turn quoting Caputo v. Henderson, 541 F.2d 979, 984 (2d Cir.
1976)); cf. Zhang v. United States, 506 F.3d 162, 168 (2d Cir.
2007) (holding that in order to obtain habeas relief in connection
with an allegedly uninformed guilty plea under Fed. R. Crim. P.
Rule 11, Petitioner must show that "there is a reasonable
probability that, but for the error, he would not have entered the
plea"); United States v. Edwards, 214 Fed. App'x 57, 60-61 (2d Cir.
2007) (holding, in a Rule 11 context, that if "the misinformation

20

in all likelihood would not have affected a defendant's decision-making calculus, then the error would be harmless, and the guilty plea need not be vacated") (citing Westcott, 159 F.3d at 113-14).

A simple misstatement at a plea allocution is rarely viewed as having an impact upon the decision to enter a plea, particularly when, viewed in context, the defendant was also given accurate information about the offense to which he was pleading and the consequences of his plea. See, e.g., Diaz v. Mantello, 115 F. Supp. 2d 411, 414 (S.D.N.Y. 2000) (finding trial court's misstatement of the murder charge to which petitioner had pled guilty was harmless error, where trial court and counsel referred directly to the correct murder charge prior to accepting petitioner's guilty plea); Nunez v. Leonardo, No. 89 Civ. 6052 (JFK), 1990 WL 79865, at *4 (S.D.N.Y. June 7, 1990) (finding that "two misstatements at a plea proceeding are insufficient to overcome the record, which clearly indicates that petitioner pleaded guilty to [the correct charge]"); Caldarola v. Quick, 568 F. Supp. 436, 444 (E.D.N.Y. 1983) (finding that, despite trial judge's repeated misstatements that petitioner was in jeopardy of life imprisonment, "petitioner has not shown that he would have decided to pursue his case to jury verdict had he known the correct sentencing possibilities").

As discussed, the Appellate Division found that Petitioner would have pled guilty even if the court had not made the misstatement.  Specifically, the Appellate Division stated:

> It was only after defendant agreed to accept this sentence that the court misspoke in referring to a 25-year determinate sentence.  Neither this misstatement, nor the court's failure to specify the minimum term of the concurrent sentence defendant would receive on the burglary conviction, could have influenced defendant's decision to plead guilty.

Morales, 875 N.Y.S.2d at 473.  Petitioner has failed to offer "clear and convincing evidence" to rebut the "presumption of correctness" regarding this determination of a factual issue by the state court.  28 U.S.C. § 2254(e)(1).

In fact, Petitioner agreed to plead guilty after having heard the actual sentence he would receive and before the court misstated his sentence.  Moreover, the transcript of the sentencing hearing supports the conclusion that Petitioner did not rely upon the court's misstatement during the plea colloquy in deciding to plead guilty.  In particular, at the sentencing hearing, when Petitioner attempted to withdraw his plea, Petitioner freely admitted that he was not even sure whether the court had promised a determinate prison sentence of twenty-five years during the plea colloquy.  (See Sentencing Tr. at 6-7.)  Although Petitioner claimed that he thought he "was given a flat bid," he admitted that he "didn't hear nothing" after the court said "25."  (Id. at 5-7.)  Indeed, when

22

Petitioner first sought to withdraw the guilty plea, he based his motion on ineffective assistance of counsel, claiming that his attorney forced him to take twenty-five years to life. (Id. at 4.)

In short, while the court misspoke during the formal plea allocution, when it informed Petitioner that he would "receive the maximum sentence of twenty-five years determinate" on the sexual act count (Plea Tr. at 100), as the Appellate Division found, that single misstatement did not render Petitioner's guilty plea invalid — particularly as it occurred after Petitioner had already pled guilty, knowing that he would receive a prison sentence of twenty-five years to life.  In other words, based on these facts, the misstatement cannot be said to have in any way "induced" the guilty plea.

In addition, given the overwhelming evidence of Petitioner's guilt, and the fact that Petitioner faced the likelihood of consecutive sentences, with a cumulative minimum of over forty years, there is no reason to believe that he was prepared to plead guilty based on a twenty-five year determinate sentence, but was not prepared to plead guilty on a sentence of twenty-five years to life.  The evidence that would have been presented against Petitioner at trial was extremely strong.  Petitioner confessed twice — once on videotape — to the sexual assault.  (See Suppression Tr. at 77-79.)  A fingerprint on a MetroCard recovered

from the victim's apartment was matched to Petitioner, (see id. at 46), and the victim identified him from a lineup as the assailant (see id. at 72).

Given Petitioner's extensive criminal history, and the overwhelming evidence of his guilt, the concurrent indeterminate sentences he received were the most favorable outcome that Petitioner could have hoped for. In other words, he had "ample motivation to plead guilty regardless of what promises were made or what he believed his sentence exposure to be," in large part, because Petitioner "most likely would have been convicted." Caldarola, 568 F. Supp. at 444; see also Williams, 591 F.2d at 172-173 (concluding that accurate information would not have influenced petitioner's decision to plead guilty because the evidence suggested that Petitioner "did not believe his chances of acquittal to be very good"); Joyner v. Vacco, No. 97 Civ. 7047 (DLC), 2000 WL 282901, at *8 (S.D.N.Y. Mar. 15, 2000) (concluding that "accurate information would not have affected [petitioner's] decision to plead," because "the evidence facing [petitioner] at trial was overwhelming").

In short, there is no basis for this Court to find unreasonable the Appellate Division's conclusion that, even if the court had not misstated, on one occasion, the sentence Petitioner would receive, Petitioner still would have pled guilty to both

24

charges.

Accordingly, Petitioner is not entitled to habeas relief on the ground that his guilty plea was not knowing and voluntary.

III. Petitioner's Contract-Based Argument

In his reply brief, Petitioner makes an additional contract-based argument as to why this Court should grant the writ of habeas corpus. In particular, noting that plea agreements — although arising in a criminal context — "are analyzed under contract law standards," Petitioner contends that the twenty-five year determinate sentence was "binding on the court because it was reduced to writing" when the trial court stated, on the record, the sentence that it intended to impose on Petitioner. (Pet'r Reply Br. at 3.) (citations omitted).

In support of this claim, Petitioner cites to a 1971 Supreme Court case, Santobello v. New York. 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971). In Santobello, the Supreme Court held that, where the state failed to keep a commitment regarding a sentence recommendation on a guilty plea, the Court would remand the case to the state courts to decide whether the circumstances of the case required only that there be specific performance of the agreement on the guilty plea, or whether the circumstances required that the defendant be granted the opportunity to withdraw his plea of guilty altogether. See 404 U.S. at 262-63, 92 S. Ct. at 499. In

25

particular, the Court held that the record established that the
defendant had "bargained and negotiated a particular plea in order
to secure dismissal of more serious charges, but also on condition
that no sentence recommendation would be made by the prosecutor."
Id. (internal quotation marks omitted).

In Williams, by contrast, the Second Circuit recognized the
limits of Santobello, in stating that "we do not believe, however,
that such misrepresentations of the law as were made by the court
. . . can, absent evidence that they were deliberate, be taken to
embody a promise to the defendant." 591 F.2d at 171, n. 5 (emphasis
added); see also Wellman v. Maine, 962 F.2d 70, 72-73 (1st Cir.
1992) (holding that Santobello was not implicated where "[t]here
was no deliberate misrepresentation made by the prosecutor").

As in Williams, Santobello does not govern the present action,
because it is clear that Petitioner did not bargain for and
negotiate a plea based on the promise of a twenty-five year
determinate sentence.  Quite to the contrary, the court made clear
to Petitioner and his attorney on more than one occasion that it
would impose a sentence of twenty-five years to life, with the
sentence on the burglary count to be concurrent.  Like Williams,
this is not a case where the "court committed itself to a
particular action within its discretion," but, rather, represents
"a situation where the legal limits on the court's sentencing

26

authority were misrepresented" on a single occasion. <u>Williams</u>, 591 F.2d at 171 n. 5.   Moreover, Petitioner has not established that the sentencing court made "deliberate misrepresentations" regarding the sentence Petitioner would receive so as to induce Petitioner to enter a guilty plea.   Indeed, the court's misstatement occurred only after Petitioner had already admitted to the crimes and pled guilty to both counts.   (<u>See</u> Plea Tr. at 98-100.)   Thus, "the concerns for the fairness and integrity of the plea bargaining process expressed in <u>Santobello</u>" were not compromised here by the court's "refusal to release from his guilty plea a defendant who did not in fact rely on sentencing misinformation." <u>Williams</u>, 591 F.2d at 171 n. 5.[3]

---

[3] In addition to Petitioner's contract-based claim being meritless, it is unexhausted and procedurally barred, because Petitioner never raised this argument in the state courts. (<u>See</u> Brief for Defendant-Appellant, Ex. B. to Declaration of Assistant Attorney General Leilani Rodriguez.) Generally, an application for a writ of habeas corpus cannot be heard unless all available state remedies have been exhausted. <u>See</u> 28 U.S.C. §§ 2254(b),(c); <u>Picard v. O'Connor</u>, 404 U.S. 270, 275-76, 92 S. Ct. 509, 512 (1971); <u>Caballero v. Keane</u>, 42 F.3d 738, 740 (2d Cir. 1994); <u>Daye v. Attorney Gen. of New York</u>, 696 F.2d 186, 190-92 (2d Cir. 1982) (<u>en banc</u>). To satisfy the exhaustion requirement, "it is not sufficient merely that the [petitioner] has been through the state courts." <u>Picard</u>, 404 U.S. at 275-76, 92 S. Ct. at 512. Rather, the claims must be "fairly presented" to the state courts so that the state has an opportunity to correct any alleged constitutional violations. <u>See id.</u>; <u>Daye</u>, 696 F.2d at 191. "In order to have fairly presented his federal claim to the state courts, the petitioner must have informed the state court of both the factual and the legal premises of the claim." <u>Id.</u>; <u>accord Lynes v. Mitchell</u>, 894 F. Supp. 119, 122 (S.D.N.Y. 1995), <u>aff'd</u>, 104 F.3d 355 (2d Cir. 1996) (table).

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the Petition be dismissed with prejudice. Furthermore, because Petitioner has not made a substantial showing of a denial of a federal right, this Court recommends that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore, 209 F.3d at 112.   This Court further recommends certification, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the Court's order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445-46, 82 S. Ct. 917, 921 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (d) (2008).   Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard Owen, United States District Judge, and to the chambers of the undersigned, Room 1660.   Any requests for an extension of time for filing objections must be directed to Judge Owen.   Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 145, 155, 106 S. Ct. 466, 470, 475 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small

28

v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).


Respectfully submitted,

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE


Dated: January 11, 2011
       New York, New York




Copies sent to:

Luis Morales, #06-A-3379
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582-4000

Leilani Rodriguez, Esq.
Attorney General of the State of New York
120 Broadway
New York, New York 10271




29